FILED
At 11:20 O'Clock A M
JAN 2 2 2008
LYNN STILLWELL
PHILLIPS COUNTY CIRCUIT CLERK
By_____ D.C.

IN THE CIRCUIT COURT OF PHILLIPS COUNTY, ARKANSAS
_____ DIVISION

WADE A. WHISTLE, AS ATTORNEY IN FACT
FOR MARGARET WHISTLE MORRIS                                    PLAINTIFF

V.                          CASE NO. CV-2008-22
                            2:08cv0037

DAVID H. ARRINGTON OIL & GAS INC.
and LANCE HOUGHTLING                                           DEFENDANTS

## COMPLAINT

Comes now the Plaintiff, Wade A. Whistle as attorney-in-fact for Margaret Whistle Morris, and for its cause of action against the above named Defendants, David H. Arrington Oil & Gas, Inc., and Lance Houghtling, states as follows:

### JURISDICTION AND VENUE

1. This is an action to recover damages for breach of contract, deceptive trade practices, fraud, and punitive damages. Phillips County, Arkansas is where the real property involved with these causes of action arose. Therefore, this matter is properly brought in the Circuit Court of Phillips County, Arkansas, pursuant to Ark. Code Ann. §16-60-112, 16-55-213(e). Further, this Court has jurisdiction pursuant to Ark. Code Ann. §16-13-201.

### THE PARTIES

2. Wade A. Whistle as attorney-in-fact for Margaret Whistle Morris, is a resident of Arkansas.

3. David H. Arrington Oil & Gas, Inc., (referred to as "Arrington Oil & Gas") is a Texas corporation doing business throughout Arkansas, whose registered agent for service is David H. Arrington, P.O. Box 2071, Midland, Texas, 79702.

4.  Lance Houghtling (referred to as "Houghtling") is an individual residing in Pope County, Arkansas at 229 Mission Dr., Russellville, AR 72802-1091. He worked either as an agent servant or employee of Arrington Oil & Gas, or pleading in the alternative, as an independent landman working on a contact basis for various companies.

## THE CAUSE OF ACTION

5.  This is an action involving the breach of an oil & gas lease involving real property in Phillips County, Arkansas and this Court, therefore, has jurisdiction of the parties and subject matter of this suit. Venue is proper in this Court because Defendants entered into the lease for real property in Phillips County, Arkansas.

6.  Defendants, Arrington Oil & Gas., and Lance Houghtling, solicited and obtained an oil & gas lease from the Plaintiff on 774 acres of minerals located in Phillips County, Arkansas. The lease is attached hereto as EXHIBIT 1.

7.  Part of the consideration for the lease to the Plaintiff was a $232,200.00 "lease bonus." This was an amount to be paid based on the number of acres involved to entice the mineral owner to execute a lease. The defendants paid the bonus via a bank draft. The defendant s subsequently cause the draft to be dishonored. This document is attached hereto as EXHIBIT 2.

8.  There are no lease provisions that allowed the dishonoring of the draft, and the draft was simply used by the defendants to defraud the plaintiff into executing the lease.

## BREACH OF CONTRACT

9.  The Defendants' have failed to pay Plaintiff the lease bonus money he was due pursuant to the lease documents in an amount totaling $232,200.00. As is described in the

paragraphs above, there is no dispute that the Plaintiff and the Defendants entered into a contract. This contract required the Defendants to perform certain acts including but not limited to payment for the lease bonus at issue. Plaintiff performed exactly what was required by the lease so there is no excuse for the Defendants' failure to perform. In fact, the Defendants wholly failed to perform what was required by the lease.

10. Pleading in the alternative, Arkansas contractual law principles of unjust enrichment and promissory estoppel mandate payment of the bonus in this case as well. The defendants herein clearly made a promise to pay the bonus by cash in hand to the plaintiff. The plaintiff reasonably relied on that promise and acted in reasonable reliance on the promise to his detriment. Enforcement of the promise is the only way injustice can be avoided.

## DECEPTIVE TRADE PRACTICES

11. The plaintiff as previously stated has sustained damages due to the unconscionable, false and deceptive acts or practices of the defendants. This conduct was approximate cause of the plaintiff's damages entitling the plaintiff to recover the full amount of the bonus, reasonable attorney fees and punitive damages.

## FRAUD

12. The Arkansas Supreme Court has defined constructive fraud as "a type of fraud based on a breach of legal or equitable duty which the law declares to be fraudulent because of its tendency to deceive others, regardless of the moral guilt, purpose, or intent of the perpetrator.[1] Representations are considered to be fraudulent and made by one who either knows them to be

---

[1] *Evans Industrial Coatings, Inc. v. Chancery Court of Union County*, 315 Ark. 728, 870 S.W.2d 701 (1994).

3

false or, not knowing, observes them to be true.[2] The defendant's conduct in asserting that they were paying a lease bonus of $232,000 via draft, then dishonoring the draft, is fraudulent *per se*.[3]

## PUNITIVE DAMAGES

13. In addition to the compensatory damages for the actual loses sustained by Plaintiff, the conduct of the Defendant's, both express and implied, was intentional, willful, wanton, reckless and done with conscious indifference to the consequences, thereby entitling Plaintiff to punitive damages. Therefore, Plaintiff should be awarded punitive damages in a total sum within the jurisdiction of this Court and in excess of federal diversity jurisdiction.

Wherefore, Plaintiff prays that it have judgment against Defendants in the sum in excess of federal court diversity jurisdiction; for its legal rate of interest thereon before and after judgment; for all costs expended in this matter; for attorney's fees and for all other just and proper relief to which it may be entitled.

Respectfully Submitted,

HOLLEMAN & ASSOCIATES, P.A.
200 West Capitol Avenue, Suite 1620
Little Rock, Arkansas 72201
Telephone: (501) 975-5040

By: _____
John T. Holleman, IV  Ark Bar No. 91056

---

[2] *Id. Citing Miskimins v. The City National Bank*, 248 Ark. 1194, 456 S.W.2d 673 (1970).

[3] See Exhibit 1 previously attached hereto.

# DAVID H. ARRINGTON OIL & GAS, INC.
P. O. Box 2071
Midland, Texas 79702

September 16, 2006

Mrs. Margaret Whistle Morris
c/o Wade A. Whistle
4412 Jenni Lane
Jonesboro, AR 72404

RE: Oil and Gas Lease between you
and David H. Arrington Oil & Gas, Inc.

Dear Mr. Whistle:

Please find enclosed herewith the original of an Oil and Gas Lease and Memorandum of Oil and Gas Lease between you, as Attorney in Fact for Margaret Whistle Morris and David H. Arrington Oil & Gas, Inc. covering certain properties you own in Phillips County, Arkansas. We are also returning the completed Form W-9.

Thank you very much for your cooperation.

Very truly yours,

LANCE HOUGHTLING

/st

Enclosures


EXHIBIT 1

# OIL AND GAS LEASE

(PAID UP)

THIS AGREEMENT is made and entered into this 5th day of April, 2006 (the effective date hereof) between Margaret Whistle Morris, a single person, whose address is 126 Harbor View Lane, Bellealr Bluffs, Florida, 33770, by Wade A. Whistle, her attorney in fact, per Durable Limited Power of Attorney dated 9 March, 1989, recorded in Book 854, Page 09, Deed Records of Phillips County, Arkansas, hereinafter called Lessor (whether one or more), and David H. Arrington Oil & Gas Inc., P.O. Box 2071, Midland, Texas 79702, hereinafter called Lessee.

Witnesseth: That the said Lessor, for and in consideration of a cash bonus in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of Lessee to be paid, kept, and performed, has GRANTED, DEMISED, LEASED and LET, and by these presents does GRANT, DEMISE, LEASE and LET unto the said Lessee, for the sole and only purpose of exploring by geophysical and other methods, mining and operating for oil (including but not limited to distillate and condensate) gas (including casinghead gas and helium and all other constituents), and for laying pipelines and building tanks, powers, stations, and structures thereon, to produce, save, and take care of said products, all that certain tract of land, together with any reversionary rights therein, situated in the County of Phillips, State of Arkansas, and described as follows:

### Section 27 Township 3 S Range 4 E

320.00 Acres more or less and more particularly described in Warranty deed dated 22 October, 1963 from C.L. Whistle and Molly Whistle, his wife to Margaret Whistle Morris, recorded in Book 427, Page 88, Deed Records of Phillips County, Arkansas.

### Section 33 Township 3 S Range 4 E

100.00 Acres more or less and more particularly described in Warranty deed dated 22 October, 1963 from C. L.Whiatle and Molly Whistle, his wife to Margaret Whistle Morris, recorded in Book 427, Page 88, Deed Records of Phillips County, Arkansas.

### Section 34 Township 3 S Range 4 E

354.00 Acres more or less and more particularly described in Warranty deed dated 22 October, 1963 from C. L. Whistle and Molly Whistle, his wife to Margaret Whistle Morris, recorded in Book 427, Page 88, Deed Records of Phillips County, Arkansas.

and containing 774 acres, more or less. In addition to the land above described, Lessor hereby grants, leases, and lets exclusively unto Lessee, to the same extent as it specifically described herein, all lands owned or claimed by Lessor which are adjacent, contiguous to, or form a part of the lands above particularly described, including all oil, gas, and their constituents underlying lakes, rivers, streams, roads, easements, and right-of-way which traverse or adjoin any of said lands.

1.  This lease, which is a "paid-up" lease requiring no rentals, shall be in force for a primary term of <u>five (5) years</u> from the date hereof, and for as long thereafter as oil or gas or other substances covered hereby are produced in paying quantities from the leased premises or from lands pooled therewith or this lease is otherwise maintained in effect pursuant to the provisions hereof.

2. In consideration of the premises, the said Lessee covenants and agrees:

A. To deliver to the credit of Lessor the 15% part of all oil (including but not limited to condensate and distillate) produced and saved from the leased premises;

B. To pay Lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises, or used in the manufacture of products therefrom, 15% of the net proceeds received for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than 15% of the actual amount received by the Lessee, said payments to be made monthly;

C. To pay Lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing head gasoline or dry commercial gas, 15% of the net proceeds, at the mouth of the well, received by Lessee for the gas during the time such gas shall be used, said payments to be made monthly;

D. Lessee is authorized to deduct from such proceeds the cost incurred in compressing, treating, dehydrating, marketing and transporting such oil, gas and/or casinghead gas for delivery in computing the net proceeds at the well payable as royalty; and

E. That all royalties, shut-in royalties, or other sums which may become payable to Lessor under the terms of this lease may be paid or tendered by cash, check, draft, electronic funds transfer, or any other commercially reasonable method which Lessee may elect from time to time.

3. If, at the expiration of the primary term or at any such time or times thereafter, there is any well on said land or on lands with which such land or any portion thereof has been pooled, capable of producing oil or gas, and all such wells are shut-in, this lease shall nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee shall not be obligated to install or furnish facilities other than well facilities and the ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to Lessee. If at any time or times after the expiration of the primary term all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, Lessee shall pay or tender as royalty, a sum equal to one dollar ($1.00) per year per net royalty acre covered hereby. Lessee shall make like payments or tenders on or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this paragraph.

4. Lessee is hereby granted the right at any time and from time to time to unitize the leased premises or any portion or portions thereof, as to all strata or any stratum or strata, with any other lands, as to all strata or any stratum or strata, for the production primarily of oil or primarily of gas with or without distillate. However, no unit for the production primarily of oil shall embrace more than 160 acres, or for the production primarily of gas, with or without distillate, more than 640 acres; provided that if any governmental regulation shall prescribe a spacing pattern for the development of the field or allocate a producing allowable based on acreage per well, then any such unit may embrace as much additional acreage as may be so prescribed or as may be used in such allocation of allowable. Operations upon and production from the unit shall be treated as if such operations were upon or such production was from the leased premises whether or not the well or wells are located thereon. The entire acreage within a unit shall be treated for all purposes as if it were covered by and included in this lease except that the royalty on production from the unit shall be as below provided and except that in calculating the amount of any shut-in gas royalties only that part of the acreage originally leased and then actually embraced by this lease shall be counted. In respect to production from the unit, Lessee shall pay Lessor, in lieu of other royalties herein, only such proportion of the royalties stipulated herein as the amount of his acreage placed in the unit, or this royalty interest therein on an acreage basis bears to the total acreage in the unit. Lessee shall file written unit designations in the county in which the leased premises are located. Notwithstanding the limitation that a production unit for oil cannot exceed 160 acres, or a production unit for gas cannot exceed 640 acres, Lessee, as the agent for Lessor is granted the right to execute all necessary ratifications of any unit agreement and/or unit operating agreements as may be necessary to obtain the approval of the Arkansas Oil & Gas Commission for the creation of a field-wide unit without regard to the size of such field-wide unit.

5. If said Lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties herein provided shall be paid to the Lessor only in the proportion which his interest bears to the whole and undivided fee.

6. Lessee shall have the right to use, free from cost, gas, oil, and water produced on said land for its operations thereon, except water from wells of Lessor.

7. When requested by the Lessor, Lessee shall bury his pipelines below plow depth.

8. No well shall be drilled nearer than 200 feet to any house or barn now on said premises without the written consent of the Lessor.

9. Lessee shall pay for all damages to growing crops on said land caused by Lessee's operations.

10. Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

11. If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns. However, no change or division in ownership of the land or royalties shall enlarge the obligations or diminish the rights of Lessee. No change in the ownership of the land or royalties shall be binding on the Lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof. In case Lessee assigns this lease, in whole or in part, Lessee shall be relieved of all obligations with respect to the assigned portion or portions arising subsequent to the date of assignment.

12. All express or implied covenants of this lease shall be subject to all Federal, State, and Municipal laws, Executive Orders, Rules, and Regulations, and this lease shall not be terminated in whole or in part, nor Lessee held liable in damages, for failure to comply therewith if compliance is prevented by or such failure is the result of any such Law, Order, Rule, or Regulation.

13. This lease shall be effective as to each Lessor on execution hereof as to his or her interest and shall be binding on those signing, notwithstanding some of the Lessors above named may not join in the execution hereof. The word Lessor as used in this lease means the party or parties who execute this lease as Lessor although not named above.

14. Lessee may at any time and from time to time surrender this lease as to any part or parts of the leased premises by delivering or mailing a release thereof to Lessor, or by placing a release of record in the proper County.

15. Lessor hereby warrants and agrees to defend the title to the lands herein described, and agrees that the Lessee shall have the right at any time to redeem for Lessor, by payment, any mortgages, taxes, or other liens on the above described lands, in the event of default of payment by Lessor, and be subrogated to the rights of the holder thereof.

16. This Lease shall never be terminated, forfeited, or canceled for Lessee's failure to perform, in whole or in part, any of the covenants, conditions, obligations and requirements set forth in this Lease, until Lessee, after written notice by Lessor, has been given a reasonable period of time within which to comply with the covenant, condition, obligation, or requirement.

17. Lessee is expressly granted the right to conduct geophysical exploration by means of seismograph, vibrosels or similar techniques. However, if Lessee conducts such geophysical exploration or operations on the lands covered by this Lease, all shot holes shall be kept a sufficient distance away from Lessor's water wells so as not to cause any damage to the water wells. Lessee shall promptly plug all shot holes with concrete plugs or other approved methods set below plow depth, fill the holes with dirt on top of the plugs, and restore the surface of the lease premises to substantially the same condition it was in prior to the commencement of the geophysical operations.

18. Lessor recognizes that Lessee has the right to use as much of the surface of the lease premises as a reasonably prudent operator would use to accomplish the purposes of this Lease.

19. Lessor hereby surrenders and releases all rights of dower and of courtesy and of homestead in the premises described herein, insofar as said rights of dower and of courtesy or of homestead may in any way affect the purposes for which this lease is made, as recited herein.

20. No litigation shall be initiated by Lessor with respect to any breach or default by Lessee hereunder, for a period of at least 90 days after Lessor has given Lessee written notice fully describing the breach or default, and then only if Lessee fails to remedy the breach or default, within such period. In the event the matter is litigated and there is a final judicial determination that a breach or default has occurred, this lease shall not be forfeited or cancelled in whole or in part unless Lessee is given a reasonable time after said judicial determination to remedy the breach or default and Lessee fails to do so.

21. On or before the expiration of the primary term of this Lease, Lessee has the option, but not the obligation, to pay Lessor the sum of $300 per net mineral acre covered by this Lease. Upon this payment being made, the primary term of this Lease shall be extended for an additional period of five (5) year years.

22. In the event that Lessor, during the primary term of this lease, receives a bona fide offer which Lessor is willing to accept from any party offering to purchase from Lessor a lease covering any or all of the substances covered by this lease and covering all or a portion of the land described herein, with the lease becoming effective upon expiration of this lease, Lessor hereby agrees to notify Lessee in writing of said offer immediately, including in the notice the name and address of the offeror, the price offered and all other pertinent terms and conditions of the offer. Lessee, for a period of fifteen days after receipt of the notice, shall have the prior and preferred right and option to purchase the lease or part thereof or interest therein, covered by the offer at the price and according to the terms and conditions specified in the offer.

IN WITNESS WHEREOF we sign the day and year first above written.

*Margaret Morris*
*by Wade A. Whistle, Attorney-in-fact*
Wade A. Whistle as attorney in fact for
Margaret Whistle Morris,

STATE OF ARKANSAS
COUNTY OF Poinsett

On this the 24th day of May, 2006, before me, the undersigned officer, personally appeared Wade A. Whistle as attorney in fact for Margaret Whistle Morris, known to me (or satisfactorily proven) to be the person(s) whose name is subscribed to the within instrument and acknowledged that he/she executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

*Starre Vest*

Notary Public, State of Arkansas
Notary's Name (printed): Starre Vest
Notary's Commission Expires: 12-27-11

(Seal)

OFFICIAL SEAL
STARRE VEST
NOTARY PUBLIC-ARKANSAS
POINSETT COUNTY
MY COMMISSION EXPIRES: 12-27-11

Prepared by:
David H. Arrington Oil & Gas, Inc.
P.O. Box 2071
Midland, TX 79702

# MEMORANDUM OF OIL AND GAS LEASE

STATE OF ARKANSAS
COUNTY OF PHILLIPS

WHEREAS, Margaret Whistle Morris, Wade A. Whistle as her attorney in fact, whose address is 126 Harbor View Lane, Belleair Bluffs, Florida, 33770, (hereinafter called Lessor) and David H. Arrington Oil & Gas, Inc. P. O. Box 2071, Midland, Texas 79702, (hereinafter called Lessee) have entered into an Oil and Gas Lease dated April 5th, 2006 (the Lease), and;

WHEREAS, the Lessee and Lessor have mutually agreed not to record the Lease in its entirety in the records of Phillips County, Arkansas, and instead have agreed to record this Memorandum of Lease;

NOW, THEREFORE, in consideration of the valuable consideration given this date, the receipt and sufficiency of which is hereby acknowledged, and of the other terms of the lease, duplicate copies of which have been retained by the parties, Lessor hereby grants, leases, and lets unto the Lessee for the purpose of exploring, drilling, operating for and producing oil and gas from the following described land in Phillips County, Arkansas:

### Section 27 Township 3 S Range 4 E

320.00 Acres more or less and more particularly described in Warranty deed dated 22 October, 1963 from C. Whistle and Molly Whistle, his wife to Margaret Whistle Morris, recorded in Book 427, Page 88, Deed Records of Phillips County, Arkansas.

### Section 33 Township 3 S Range 4 E

100.00 Acres more or less and more particularly described in Warranty deed dated 22 October, 1963 from C. Whistle and Molly Whistle, his wife to Margaret Whistle Morris, recorded in Book 427, Page 88, Deed Records of Phillips County, Arkansas.

### Section 34 Township 3 S Range 4 E

354.00 Acres more or less and more particularly described in Warranty deed dated 22 October, 1963 from C. Whistle and Molly Whistle, his wife to Margaret Whistle Morris, recorded in Book 427, Page 88, Deed Records of Phillips County, Arkansas.

and containing 774 acres, more or less.

All in accordance with the terms and conditions of the Lease, the Lease shall be effective for a term of five (5) years from the date of the Lease and as long thereafter as oil or gas or other substances covered thereby are produced from said land. Further, lessee has the right to extend the lease for an additional five (5) year term. Should there be any conflict between this Memorandum of Lease and the Lease herein referred to, then in all cases the Lease shall take precedence. In addition, in the event of a conflict between the terms of the addendum to the said lease and the terms of the printed lease form, the terms of the addendum to said lease shall prevail.

The provisions hereof shall extend to and be binding upon the heirs, successors and legal representatives and assigns of the parties hereto.

This instrument may be executed in any number of counterparts, each of which shall be deemed an original and shall be binding upon the party or parties so executing, their heirs, successors and assigns, and all of which when taken together constitute but one and the same instrument.

EXECUTED this __24th__ day of __May__, 2006.

Lessor:

_Margaret Morris_
_by Wade A. Whistle, Attorney-in-fact_
Wade A. Whistle as attorney in fact for
Margaret Whistle Morris

Lessee:

_____
David H. Arrington Oil & Gas, Inc.
By: David H. Arrington, President

STATE OF ARKANSAS
COUNTY OF __Poinsett__

On this the __24th__ day of __May__, 2006, before me, the undersigned officer, personally appeared Wade A. Whistle as attorney in fact for Margaret Whistle Morris, known to me (or satisfactorily proven) to be the person(s) whose name is subscribed to the within instrument and acknowledged that he/she executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

(Seal)
OFFICIAL SEAL
STARRE VEST
NOTARY PUBLIC-ARKANSAS
POINSETT COUNTY
MY COMMISSION EXPIRES: 12-27-11

_Starre Vest_
Notary Public, State of Arkansas
Notary's Name (printed): Starre Vest
Notary's Commission Expires: 12-27-11

# ADDENDUM TO OIL AND GAS LEASE

Attached hereto and made a part that certain Oil, Gas and Mineral Lease as dated April 5th, 2006, by and between Margaret Whistle Morris, Wade A. Whistle as attorney in fact, as Lessor, and David H. Arrington Oil & Gas, Inc., as Lessee.

ADDITIONAL PROVISIONS:

1. Notwithstanding any other provision hereof, it is understood and agreed that this lease covers and includes oil and gas only (including with oil and gas, all constituent elements thereof and all other liquefiable hydrocarbons and products of every kind or character derived there from and produced therewith, including sulfur), and that all minerals other than oil and gas are excepted herefrom and reserved to Lessor. Included among the minerals reserved to Lessor and excluded from this lease are coal, uranium and lignite.

2. Lessee shall pay Lessor for all damages to Lessor's land, fences, gates, roads, drainage, buildings and other improvements, growing crops and cattle, which are caused by or result from Lessee's operations on the leased premises. It is agreed that all roads and locations made, used or constructed by the Lessee shall be terraced in such manner as to best control and prevent erosion. If the surface of the land where any well is drilled has been disturbed by Lessee upon the termination of this lease, Lessee shall within Six (6) months, weather conditions permitting, level and repair the surface of the land in substantially the same condition as is reasonably practicable as it was prior to the commencement of such operations. Lessee shall within Six (6) months remove all equipment from the leased land, remove all rock, soil or other substances brought to the leased land by Lessee and restore the leased land to a condition similar to that prior to the commencement or operations by Lessee. If any fences existing on said lands are cut by Lessee for its purposes, upon agreement between Lessee and Lessor, Lessee shall establish and maintain a good and substantial cattle guard or gate, which gate will be kept locked by Lessee, at such point to prevent the escape of Lessor's livestock at such entrance or any place where Lessee disturbs the fences and Lessee agrees to construct proper and sufficient braces at any point where fences are to be cut prior to cutting such fence. It is agreed that such braces shall be so constructed that slack will not develop in the existing fences. Lessor shall have the right to continue to use the surface of said land for agricultural and grazing purposes, unless said use would interfere with Lessee's operations, and Lessee shall pay to Lessor (or any tenants of Lessor as their interest may appear), any damage to crops, land, livestock, trees or any other property caused by or resulting from Lessee's operations on the leased premises permitted hereunder. Lessee agrees to erect and maintain a fence capable of turning back livestock of ordinary demeanor around its drill site containment pond, tank batteries, and any other facilities placed upon the leased premises as a result of its operations thereon, within Sixty (60) days after receiving written request from Lessor. Additionally, should any of Lessee's operations, geophysical or otherwise, hereunder cause any damage to existing water wells, springs, lakes, ponds or dams, Lessee will be responsible for the repair or restoration of such property or equipment. Lessee shall clean and remove from each well site, tank battery location, Lessee's roads and all other operational sites all discarded materials and debris of every kind as it accumulates, and shall keep each well site, tank battery location, Lessee's roads and all other operational sites in a neat and orderly condition throughout the term of this lease.

3. Lessee, its employees, contractors or their employees, shall not have the right to hunt or fish on the leased premises, and no firearms or hunting dogs shall be allowed thereon.

4. Lessee shall have the right to perform all phases of exploration, drilling, production and transportation necessary to find, produce, save and market leased substances, but shall not have the right to use the surface of the leased land for any other activities or for any facilities not necessary to find, produce, save and market leased substances and transport them from the leased land. Lessee shall not have the right to establish and utilize facilities for surface or subsurface disposal of salt water, construct bridges, dig canals, build tanks, power stations, product treatment facilities, telephone lines or employee housing on the leased premises except those on the drilling pad. All pipelines and other equipment not on the drilling pad shall be buried at least 36" deep.

5. Any provisions herein to the contrary notwithstanding, Lessee shall not have the privilege of using surface water from the leased premises without the prior consent of the Lessor. In the event Lessee drills a water well upon the leased premises for its use in its operations thereon, then upon cessation of its operations, and at Lessor's request,

said water well and all pipe and connections will be assigned to Lessor, who shall assume all rights, responsibilities and liabilities, if any, for operation and maintenance of said water well.

6. As stated herein, Lessee shall be liable for all damages to improvements, growing crops, pasture land and livestock that may be caused by Lessee's operations hereunder.

7. If directed by Lessor, Lessee shall plant hedges or provide other landscaping and shall take measures as may be requested by Lessor to shield all surface equipment from view. Lessee shall keep all surface equipment in a good state of repair and painted as often as is necessary to maintain a good appearance.

8. It is expressly agreed and understood that Lessee's right to maintain this lease in force after the expiration of the primary term hereof by the payment of shut-in gas royalty under Paragraph 3 of this lease shall be limited to 36 months in the aggregate. Further notwithstanding the provisions contained in Paragraph 3 of this lease the annual shut-in payment amount shall be $25.00 per net mineral acre.

9. Lessee agrees to consult with Lessor on the selection of well locations, laying of pipelines and the selection of road locations on the leased premises to minimize the interference with the development uses of said land.

10. Subsequent to the execution of this lease, Lessor agrees to execute and deliver to Lessee any and all documents necessary to perfect title to the land included within this lease.

11. Lessee's activities under the Lease shall be conducted in a manner expected of a reasonably prudent operator as to exploration for, and production and marketing of, oil, gas, or constituents thereof.

SIGNED FOR IDENTIFICATION:

*Margaret Morris*
*by Wade A. Whistle, attorney-in-fact*
Wade A. Whistle as attorney in fact for
Margaret Whistle Morris,

**END OF ADDENDUM**

| Form **W-9** (Rev. October 2004) Department of the Treasury Internal Revenue Service | **Request for Taxpayer Identification Number and Certification** | Give form to the requester. Do not send to the IRS. |
|---|---|---|

Name (as reported on your income tax return)
MARGARET WHISTLE MORRIS

Business name, if different from above

Check appropriate box: ☒ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other ▶ ............     ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)
4412 JENNI LANE

Requester's name and address (optional)

City, state, and ZIP code
JONESBORO, AR 72404

List account number(s) here (optional)

### Part I — Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Note. *If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.*

Social security number: 4 2 9 — 7 8 — 9 6 3 9

or

Employer identification number: 

### Part II — Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign Here** Signature of U.S. person ▶ *Margaret Morris by Wade Whistle attorney-in-fact*   Date ▶ 5/23/06

### Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify that you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee.

**Note.** *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

For federal tax purposes you are considered a person if you are:

- an individual who is a citizen or resident of the United States,
- a partnership, corporation, company, or association created or organized in the United States or under the laws of the United States, or

- any estate (other than a foreign estate) or trust. See Regulation section 301.7701-6(a) for additional information.

**Foreign person.** If you are a foreign person, use the appropriate Form W-8 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.
2. The treaty article addressing the income.
3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

Cat. No. 10231X

Form **W-9** (Rev. 10-2004)

On approval of lease or mineral deed described hereon, and on approval of title to same by drawee not later than 90 banking days after arrival of this draft at Collecting bank, with the right to Re-Draft.

April 5th, 2006

PAY TO THE ORDER OF _____ Margaret Whistle Morris _____ $232,200.00

*** TWO HUNDRED THIRTY TWO THOUSAND TWO HUNDRED DOLLARS AND 00/100 ***

This draft is drawn to pay for Oil and Gas Lease, dated April 5th, 2006 and covering 774 acres, more or less, being a tract of land in Section 27 Township 3 S Range 4 E, Section 33 Township 3 S Range 4 E, Section 34 Township 3 S Range 4 E, Mississippi County, Arkansas. The drawer, payee and endorsers hereof, and the grantor in the lease of mineral deed described hereon, do hereby constitute and appoint the collecting bank escrow agent to hold this draft for the time above specified subject alone to acceptance and payment hereof by drawee, within said time, and without any right of the drawer, payee or endorsers hereof, or said grantor, to recall or demand return of this draft or to the expiration of the above specified time, and there shall be no liability whatsoever on the collecting bank for refusing to return the same prior to such expiration. In the event this draft is not paid within said time, the collecting bank shall return the same to forwarding bank and no liability for payment or otherwise shall be attached to any of the parties hereto.

OCT 11 2006

TO: David H. Arrington Oil & Gas, Inc.   DRAWEE
AT: Western National Bank - Oil & Gas Collection Department
    508 West Wall Street   WESTERN NATIONAL BANK
    Midland, Texas 79701   MIDLAND   880737
    Collecting Bank
    PHONE: (432) 617-1226

Drawer: Sammy Russo

ENDORSEMENT:
Margaret Morris by Wade Whistle
Wade Whistle as attorney in fact for
Margaret Whistle Morris

SS# 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

---

**Western National Bank**
Attn: Collection Dept.
Midland, TX 79701   Telephone: (432)617-1226

**Collection Letter**
**Incoming Collection Letter**
**Original**

08

Please Report By
Our Collection #:   3865

| Date Received | Payer | Date Due | 10/10/2006 |
|---|---|---|---|
| 6/2/2006 | MARGARET MORRIS | Amount | $232,200.00 |

UNPAID
OCT 11 2006
WESTERN NATIONAL BANK
MIDLAND   880737
Payer

Your Collection Number: 969

Prepared By: Andrea Mansell

Mail To:
THE FARMERS BANK AND TRUST COMPANY
ATTN: COLLECTION DEPT
PO BOX 688
BLYTHEVILLE, AR 72315

| | |
|---|---|
| Our Charge | |
| Other Charges | |
| Waived | |
| Please Pay | $232,200.00 |

Account Number:
David H. Arrington
P O Box 2071
Midland, TX  79702

Special Instructions:

EXHIBIT 2

STATE OF TEXAS

COUNTY OF MIDLAND

On this the _____ day of _____, 2006, before me, the undersigned officer, personally appeared David H. Arrington, as President of David H. Arrington, Oil & Gas, Inc. and on behalf of said corporation, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

(Seal)

_____
Notary Public, State of Texas
Notary's Name (printed):
Notary's Commission Expires:

IN THE CIRCUIT COURT OF PHILLIPS COUNTY, ARKANSAS
FIRST DIVISION

WADE A. WHISTLE, AS ATTORNEY IN FACT                                    PLAINTIFF
FOR MARGARET WHISTLE MORRIS

VS.                              CASE NO. CV-2008-22

DAVID H. ARRINGTON OIL & GAS INC.                                       DEFENDANTS
and LANCE HOUGHTLING

THE STATE OF ARKANSAS TO DEFENDANT(S):   DAVID H. ARRINGTON
                                         OIL & GAS INC.
                                         214 West Texas Ave., Suite 400
                                         Midland, TX 79701

## SUMMONS
## NOTICE OF LAWSUIT

1. You are hereby notified that a lawsuit has been filed against you. The relief asked is stated in the attached Complaint.
2. The attached Complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the Complaint unless you file a pleading and thereafter appear and present your defense. Your pleading or Answer must meet the following requirements:
   A. It must be in writing and otherwise comply with the Arkansas Rules of Civil Procedure.
   B. It must be filed in the court clerk's office within 30 days from the day you were served with this Summons.
3. If you desire to be represented by an attorney, you should immediately contact your attorney so that an Answer can be filed for you within the time allowed.
4. Additional notices:

Witness my hand and seal of the Court on this 21st day of February, 2008.

Address of the Clerk's Office:           Lynn Stillwell, CIRCUIT CLERK
620 Cherry Street                        By: _____, D.C.
Helena, AR 72342                             Deputy Clerk

John T. Holleman
Attorney for Plaintiff
200 W. Capitol Ave., Suite 1620
Little Rock, AR 72201
(501) 975-5040