**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**HELENA DIVISION**

**WADE A. WHISTLE, as attorney**
**in fact for MARGARET WHISTLE MORRIS**                                    **PLAINTIFF**

**v.**                                    **2:08CV00037 BSM**

**DAVID H. ARRINGTON OIL & GAS INC.**
**and LANCE HOUGHTLING**                                    **DEFENDANTS**

**ORDER**

Before the court are plaintiff's motion for summary judgment and defendants' motion for summary judgment and supplement. In the complaint, plaintiff alleges breach of contract, unjust enrichment, promissory estoppel, deceptive trade practices, fraud, constructive fraud, and fraud *per se*. For the reasons set forth below, plaintiff's motion for summary judgment is granted as stated herein, and defendants' motion for summary judgment is granted in part, and denied in part.

**I.  FACTS**

On May 24, 2006, Wade A. Whistle ("Whistle"), as attorney-in-fact for Margaret Whistle Morris ("Morris"), signed an Oil and Gas Lease (the "Lease") and Memorandum of Oil and Gas Lease (the "Memorandum") between Margaret Whistle Morris and David H. Arrington Oil & Gas, Inc. ("Arrington"), and sent it back to the defendants. Plaintiff's statement of undisputed facts (Doc. Nos. 13 and 23) ("Pltf.'s stmt. of facts"), ¶ 3. The Lease is entitled "OIL AND GAS LEASE (PAID UP)" states, in pertinent part:

> THIS AGREEMENT is made and entered into on this 5th day of April, 2006
> (the effective date hereof) between Margaret Whistle Morris, a single person,

whose address is 126 Harbor View Lane, Belleair Bluffs, Florida, 33770, by Wade A. Whistle, her attorney in fact, per Durable Limited Power of Attorney dated 9 March, 1989, recorded in Book 654, Page 09, Deed Records of Phillips County, Arkansas, hereinafter called Lessor (whether one or more), and David H. Arrington Oil & Gas Inc., P.O. Box 2071, Midland, Texas 79702, hereinafter called Lessee.

Witnesseth: That the said Lessor, for and inconsideration of a cash bonus in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of Lessee to be paid, kept, and performed, has GRANTED, DEMISED, LEASED and LET, and by these presents does GRANT, DEMISE, LEASE and LET unto the said Lessee, for the sole and only purpose of exploring by geophysical and other methods, mining and operating for oil (including but not limited to distillate and condensate) gas (including casinghead gas and helium and all other constituents), and for laying pipelines and building tanks, powers, stations, and structures thereon, to produce, save, and take care of said products, all that certain tract of land, together with any reversionary rights therein, situated in the County of Phillips, State of Arkansas, and described as follows:

<u>Section 27 Township 3 S Range 4 E</u>

320.00 Acres more or less and more particularly described in Warranty deed dated 22 October, 1963 from C.L. Whistle and Molly Whistle, his wife to Margaret Whistle Morris, recorded in Book 427, Page 88, Deed Records of Phillips County, Arkansas.

<u>Section 33 Township 3 S Range 4 E</u>

100.00 Acres more or less and more particularly described in Warranty deed dated 22 October, 1963 from C.L. Whistle and Molly Whistle, his wife to Margaret Whistle Morris, recorded in Book 427, Page 88, Deed Records of Phillips County, Arkansas.

<u>Section 34 Township 3 S Range 4 E</u>

354.00 Acres more or less and more particularly described in Warranty deed dated 22 October, 1963 from C.L. Whistle and Molly Whistle, his wife to Margaret Whistle, recorded in Book 427, Page 88, Deed Records of Phillips County, Arkansas.

and containing 774 acres, more or less.  In addition to the land described above, Lessor hereby grants, leases, and lets exclusively unto Lessee, to the same extent as it specifically described herein, all lands owned or claimed by Lessor which are adjacent, contiguous to, or form a part of the lands above particularly described, including all oil, gas, and their constituents underlying lakes, rivers, streams, roads, easements, and right-of-way which traverse or adjoin any of said lands.

1.      This lease, which is a "paid-up" lease requiring no rentals, shall be in force for a primary term of <u>five (5) years</u> from the date hereof, and for as long thereafter as oil or gas or other substances covered hereby are produced in paying quantities from the lease premises or from lands pooled therewith or this lease is otherwise maintained in effect pursuant to the provisions hereof. . . .

13.     This lease shall be effective as to each Lessor on execution hereof as to his or her interest and shall be binding on those signing, notwithstanding some of the Lessors above named may not join in the execution hereof.  The word Lessor as used in this lease means the party or parties who execute this lease as Lessor although not named above.

14.     Lessee may at any time and from time to time surrender this lease as to any part or parts of the leased premises by delivering or mailing a release thereof to Lessor, or by placing a release of record in the proper County. . . .

Exhibit 1, plaintiff's motion for summary judgment ("pltf.'s motion").  The Lease concludes

with one signature line for "Wade A. Whistle as attorney-in-fact for Margaret Whistle

Morris," and is signed, "Margaret Morris by Wade A. Whistle, Attorney-in-fact."  *Id*.

Similarly, the "ADDENDUM TO OIL AND GAS LEASE" (the "Addendum") ends with one

signature line for "Wade A. Whistle as attorney-in-fact for Margaret Whistle Morris," and

is signed, "Margaret Morris by Wade A. Whistle, Attorney-in-fact."  *Id*.  The Addendum

states in part, "Subsequent to the execution of this lease, Lessor agrees to execute and deliver

to Lessee any and all documents necessary to perfect title to the land included within this lease." *Id.*

The Memorandum states, in pertinent part:

WHEREAS, Margaret Whistle Morris, Wade A. Whistle as her attorney in fact, whose address is 126 Harbor View Lane, Belleair Bluffs, Florida, 33770, (hereinafter called Lessor) and David H. Arrington Oil & Gas, Inc. P.O. Box 2071, Midland, Texas 79702 (hereinafter called Lessee) have entered into an Oil and Gas Lease dated April 5th, 2006 (the Lease), and;

WHEREAS, the Lessee and Lessor have mutually agreed not to record the Lease in its entirety in the records of Phillips County, Arkansas, and instead have agreed to record this Memorandum of Lease;

NOW, THEREFORE, in consideration of the valuable consideration given this date the receipt and sufficiency of which is hereby acknowledged, and of the other terms of the lease, duplicate copies of which have been retained by the parties, Lessor hereby grants, leases, and lets unto the Lessee for the purpose of exploring, drilling, operating for and producing oil and gas from the following described land in Phillips County, Arkansas:

<u>Section 27 Township 3 S Range 4 E</u>

320.00 Acres more or less and more particularly described in Warranty deed dated 22 October, 1963 from C.L. Whistle and Molly Whistle, his wife to Margaret Whistle Morris, recorded in Book 427, Page 88, Deed Records of Phillips County, Arkansas.

<u>Section 33 Township 3 S Range 4 E</u>

100.00 Acres more or less and more particularly described in Warranty deed dated 22 October, 1963 from C.L. Whistle and Molly Whistle, his wife to Margaret Whistle Morris, recorded in Book 427, Page 88, Deed Records of Phillips County, Arkansas.

<u>Section 34 Township 3 S Range 4 E</u>

4

354.00 Acres more or less and more particularly described in Warranty deed dated 22 October, 1963 from C.L. Whistle and Molly Whistle, his wife to Margaret Whistle, recorded in Book 427, Page 88, Deed Records of Phillips County, Arkansas.

and containing 774 acres, more or less.

All in accordance with the terms and conditions of the Lease, the Lease shall be effective for a term of five (5) years from the date of the Lease and as long thereafter as oil or gas or other substances covered thereby are produced from said land.  Further, the lessee has the right to extend the lease for an additional five (5) year term.  Should there be any conflict between this Memorandum of Lease and the Lease herein referred to, then in all cases the Lease shall take precedence.  In addition, in the event of a conflict between the terms of the addendum to the said lease and the terms of the printed lease form, the terms of the addendum to said lease shall prevail.

The provisions hereof shall extend to and be binding upon the heirs, successors and legal representatives and assigns of the parties hereto.

This instrument may be executed in any number of counterparts, each of which shall be deemed an original and shall be binding upon the party or parties so executing, their heirs, successors and assigns, and all of which when taken together constitute but one and the same instrument.

EXECUTED this 24th day of May, 2006

. . .

*Id*.  The Memorandum contains a signature line for "Wade A. Whistle as attorney in fact for Margaret Whistle Morris," which is signed, "Margaret Morris by Wade A. Whistle, Attorney-in-fact."  The Memorandum also contains a signature line for "David H. Arrington Oil & Gas, Inc. By: David H. Arrington, President," but it is not signed.

A Bank Draft dated April 5th, 2006, in the amount of $232,200 was paid to the order of Margaret Whistle Morris.  The bank draft provided, in part:

5

On approval of lease or mineral deed described hereon, and on approval of title to same by drawee not later than 90 banking days after arrival of this draft at Collecting bank, with the right to Re-Draft.
. . .
This draft is drawn to pay for Oil and Gas Lease, dated April 5th, 2006 and covering 774 acres, more or less, being a tract of land in Section 27 Township 3 S Range 4 E, Section 33 Township 3 S Range 4 E, Section 34 Township 3 S Range 4 E, Phillips County, Arkansas.

The drawer, payee and endorsers hereof, and the grantors of the lease or mineral deed described hereon, do hereby constitute and appoint the collecting bank escrow agent to hold this draft for the first time above specified subject alone to acceptance of payment hereof by drawee, within said time, and without any right of the drawer, payee or endorsers hereof, or said grantors, to recall or demand return of this draft prior to the expiration of the above specified time, and there shall be no liability whatsoever on the collecting bank for refusal to return the same prior to such expiration.

In the event this draft is not paid within said time, the collecting bank shall return the same to forwarding bank and no liability for payment or otherwise shall be attached to any of the parties hereto.

Exhibit 2, pltf.'s motion.  The "drawee" is "David H. Arrington Oil & Gas, Inc." and the "collecting bank is "Western National Bank - Oil & Gas Collection Department" in Midland, Texas.  The signature line for "Drawer: Sammy Russo" is signed "Sammy Russo," and the "Endorsement" signature line for "Wade A. Whistle as attorney in fact for Margaret Whistle Morris" is signed, "Margaret Morris by Wade A. Whistle, Attorney-in-fact."

A letter dated September 16, 2006, from Lance Houghtling ("Houghtling") to Morris "c/o Wade A. Whistle," states:

Please find enclosed herewith the original Oil and Gas Lease and Memorandum of Oil and Gas Lease between you, as Attorney in Fact for Margaret Whistle Morris and David H. Arrington Oil & Gas, Inc. covering

6

certain properties you own in Phillips County, Arkansas.   We are also returning the completed Form W-9.

Thank you very much for your cooperation.

Exhibit 3, pltf.'s motion.  It appears that the draft was returned as unpaid on October 11, 2006.  Arrington has never drilled a well on, nor produced minerals from the subject land. Defendants' statement of undisputed facts (Doc. Nos. 17 and 27) ("Defs.' stmt. of facts"), ¶ 9.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56; *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim.  *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or

denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

### III.  MOTIONS FOR SUMMARY JUDGMENT

**A.      Breach of Contract**

Arkansas has recognized three well-established principles of contract law. The first rule of interpretation of a contract is to give to the language employed the meaning which the parties intended. *First Nat'l Bank of Crossett v. Griffin*, 310 Ark. 164, 169, 832 S.W.2d 816, 819 (1992). Second, in construing any contract, the court must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain, ordinary meaning. *Id*. Third, if at all possible, different clauses of a contract must be read together and the contract construed so that all of its parts harmonize, and giving effect to one clause to the exclusion of another on the same subject where the two are reconcilable is error. *Id*. at 169-70.

"The parol evidence rule prohibits introduction of extrinsic evidence, parol or otherwise, which is offered to vary the terms of a written agreement." *Id*. at 168, 832 S.W.2d at 818. "It is a general proposition of the common law that in the absence of fraud,

accident or mistake, a written contract merges, and thereby extinguishes, all prior and contemporaneous negotiations, understandings and verbal agreements on the same subject." *Id.* (quoting *Farmers Coop. Ass'n v. Garrison,* 248 Ark. 948, 952, 454 S.W.2d 644, 646 (1970)).  The parol evidence rule, however, does not prohibit the introduction of extrinsic evidence where it would aid the court in interpreting the meaning of particular language of a contract or allow the court to acquaint itself with the circumstances surrounding the making of the contract,  *Id.* at 168-69.  "The initial determination of the existence of ambiguity rests with the court and, if the writing contains a term which is ambiguous, parol evidence is admissible and the meaning of the ambiguous term becomes a question of fact for the factfinder."  *Id.* at 169.

"Language in a contract is ambiguous when there is doubt or uncertainty as to its meaning or it is fairly susceptible of two interpretations."  *Denton v. Pennington*, 82 Ark. App. 179, 183, 119 S.W.3d 519, 521-22 (2003).  "Ambiguities in an oil and gas lease should be construed in favor of the lessor and against the lessee."  *Hanna Oil and Gas Co. v. Taylor*, 297 Ark. 80, 82, 759 S.W.2d 563, 565 (1988).

The court notes, however, that "[t]he general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are, in the eye(s) of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance."  *Sorrells v. Bailey Cattle Co.*, 268 Ark. 800, 810-11, 595 S.W.2d

950, 955 (1980) (quoting *Rawleigh Co. v. Wilkes*, 197 Ark. 6, 121 S.W.2d 886 (1938)).  "To permit consideration of two or more instruments together in a transaction for the sale of real estate to meet the requirements of the statute of frauds there must be some incorporation by one of the other or some reference to the other found in the instrument."  *Id.*  Here, Whistle testified that he received the Bank Draft at the same time that he received the Lease.  Ex. 1, Whistle dep. p. 31, defs.' supp.  Additionally, the Bank Draft references the land that is the subject of the Lease.  Furthermore, the affidavit of Sammy Russo states that he delivered the Lease, Memorandum, and Bank Draft at the same time.  Ex. 1, Russo aff., defs.' motion.

Defendants assert that the draft contained at least two conditions precedent to the formation of a contract.  The first condition is found in the words "[o]n approval of lease or mineral deed described hereon, and on approval of title to same."  The second condition is found in the statement that the draft is "subject alone to acceptance of payment hereof by drawee, within said time."  Defendants state that because neither of these conditions occurred, no enforceable contract was formed.  Defendants further assert that the no liability clause relieves them of liability and causes a lack of mutuality.  The no liability clause states, "In the event this draft is not paid within said time, the collecting bank shall return the same to forwarding bank and no liability for payment or otherwise shall be attached to any of the parties hereto."

In *Broughton Assocs. Joint Venture v. Boudreaux*, 70 S.W.3d 324, 328 (Tex. App. 2002), the bank draft provided almost identical language to the bank draft in this case: "On

approval of lease or mineral deed described hereon, and on approval of title to same by drawee not later than 15 banking days after arrival of this draft at collecting bank." The parties agreed that the 15 banking days was to allow the prospective lessee the opportunity to check title. *Id*. The court found that at the time of the exchange of the draft and the deed between the prospective lessee and the lessors, there was no binding contract because approval of title was a condition precedent to the formation of a contract. *Id*. The court stated that the draft effectively protected the prospective lessees from paying for the property if it disapproved the title. *Id*. Similarly, in *Spellman v. Lyons Petroleum, Inc.*, 709 S.W.2d 295, 297-98 (Tex. App. 1986), the bank draft contained nearly identical language to the Bank Draft here. The court held that the contract failed for want of mutuality due to the no liability clause. *Id*.

In support of his assertion that a binding contract exists between the parties, Whistle cites *Cohn v. Jeffries*, 89 Ark. 144, 115 S.W. 926 (1909). There, the Arkansas Supreme Court held that a contract was formed when plaintiffs signed a lease and returned it to the defendant land owner. *Id*. The defendant land owner sent a lease to plaintiffs with a letter requesting that they sign and return the lease. *Id*. The letter stated that defendant land owner would send plaintiffs a copy of the lease with defendant's signature, but instead, defendant subsequently sent a letter to plaintiffs stating that she had sold the property and was returning the lease. *Id*.

Whistle notes that neither the Lease nor the Addendum included a signature line for Arrington.  He contends that the parties negotiated, and orally agreed to, the terms of the Lease, and that defendants' actions of preparing and delivering the Lease and Bank Draft constituted an offer, which he accepted by signing and returning the Lease.  He also contends that the defendants' actions indicate their acceptance of the Lease.  Whistle states that defendants held the Lease from May until September 2006, without any objection as to the validity of the lease, title or otherwise, and that defendants only caused the draft to be dishonored upon discovery that they had hit a dry hole on an adjoining property.  Whistle also states that the text of the letter sent by defendants on September 16, 2006, would lead any reasonable person to infer that the lease was valid and binding upon both parties.

Whistle also asserts that the long-term common practice in the Arkansas oil and gas business that the lease must be signed only by the lessor.  *See* Charles A. Morgan, *The Arkansas Leasing Manual*, http://www.aogc.state.ar.us/PDF/Leasing%20Manual%202008.pdf ("The lease must be signed by the lessors, if they are individuals . . . .").  Furthermore, Whistle asserts that defendants should be estopped from asserting that the lease is invalid on the ground that it was executed improperly.

Whistle further asserts that the title of the Lease "OIL AND GAS LEASE (PAID UP)," the preamble of the lease stating that it was executed for and in consideration of a cash bonus in hand paid, and the effective date of April 5, 2006, contradicts defendants' argument that conditions existed.  Whistle states that the intent of the conditional language contained

in the Bank Draft was to allow defendants time to do title work to verify good title.  Whistle also states that at no time have defendants claimed any issue as to the validity of the title, and thus, even if this provision is considered a condition, the condition has been met.

Whistle notes that in *First Nat'l Bank v. Rhode Island Ins. Co.*, 43 S.W.2d 535, 536-37 (Ark. 1931), the bank draft provided, "Upon acceptance, Pay to the order of Spencer Mercantile Company, D.R. Spencer, Sole Owner, First National Bank of Huttig, Ark. Four Hundred Thirty Nine and 03 Dollars ($439.03) in full satisfaction and discharge of all claims for loss and damage by fire property insured . . . ."  The Arkansas Supreme Court held that the words "upon acceptance" "had no legal effect on the instrument" because the words "were in the instrument when it was signed by the president of the corporation, and the very act of drawing the bill is deemed an acceptance of it, and the holder may treat it as an accepted bill of exchange or as a promissory note."  *Id.*

Whistle also asserts that the no liability clause does not constitute a condition to the Lease or cause it to fail for lack of mutuality.  He notes that in *St. Romain v. Midas Exploration, Inc*., 430 So.2d 1354, 1357-58 (La. Ct. App. 1983), the draft stated that if payment was not made within the time stated on the face of the draft, the collecting bank shall return it ". . . and no liability for payment or otherwise shall be attached to any of the parties hereto."  The court concluded that there was an implied acceptance of the offer to lease subject only to the approval of the lessor's title, the lease "ripened into a binding and valid obligation" on the lessees, and the lessors were entitled to recover the bonus payments.

13

*Id*.  The court found that consent was manifested to the lease agreement when lessee tendered the draft for payment of the bonus and attempted to sell the lease.  *Id*.

Whistle distinguishes *Spellman* by noting that in that case, the lessor revoked the lease five days after it was executed, the lessor showed no intention to be bound by the lease, and the court construed the language of the draft against the drafter.  709 S.W.2d at 296.  Whistle states that from May until September 2006, defendants never indicated that they would not be bound by the lease.  Whistle asserts that any ambiguities should be interpreted against defendants.

Defendants assert that *St. Romain* is distinguishable because in that case the lessee attempted to sell the lease.  Defendants also assert that *Cohn* is distinguishable because in that case, the only condition for acceptance by the landlord was the signing and returning of the lease.  Defendants further state that in this case, the Lease and Draft provided express conditions establishing that the transaction was subject to approval and acceptance by Arrington and payment of the Bank Draft by Arrington before an enforceable agreement existed.  Defendants state that Arrington did not authorize payment of the Bank Draft, did not sign the Memorandum, did not record the Lease or the Memorandum, did not take possession of the property, and did not drill a well, and thus, did nothing indicating acceptance of the Lease.  For these reasons, defendants assert that no binding agreement was formed.

14

The court finds that the words "[o]n approval of lease or mineral deed described hereon, and on approval of title to same" only placed a condition precedent of title approval on the formation of the contract.  It appears to be undisputed that there was no issue as to the validity of the title, and thus, the condition was met.  The provision that the draft is "subject alone to acceptance of payment hereof by drawee, within said time" does not constitute a condition precedent because it simply restates the general principle that any draft must be accepted to charge the drawee.  *Canal Ins. Co. V. First Nat'l Bank of Ft. Smith*, 266 Ark. 1044, 1050, 596 S.W.2d 710, 713 (1979).  Furthermore, when read in conjunction with the Lease, the no liability clause does not relieve defendants of liability or cause a lack of mutuality.  It is undisputed that the draft was not paid.  Summary judgment in favor of plaintiff on the breach of contract claim is appropriate.

**B.      Authority to Enter into the Contract**

Defendants assert that Whistle had no authority to execute an oil and gas lease on behalf of Morris, the owner of the property, because he only had a limited power of attorney that did not authorize the sale or lease of land.  The durable limited power of attorney signed by Morris states in part:

> THAT I, Margaret Whistle Morris . . . by these presents do make, constitute and appoint Wade A. Whistle as my true and lawful agent and attorney in fact, and for me in my name and stead to do and perform any and all things which may be necessary in connection with all real property and/or farmland owned by me, or in which I may own an interest, in the States of Tennessee and Arkansas, with the power to purchase seed, fertilizer, herbicides, insecticides, pumps, motors, wells, gearheads, and to employ personnel to maintain and repair or replace the same, to collect and receive all rents and profits from my

real property and/or farmland in my name and to endorse all of said rents and profits received for deposit into one or both accounts in my name . . .; to sign all papers which may be required by the United States of America, the United States Department of Agriculture, or any subdivision or related entity thereof or therein, in connection with the obtaining of crop allotments, crop loans, crop payments, and in connection therewith to act on my behalf in entering all programs, the selling and delivering of commodities, signing applications, borrowing money, receiving payments, executing real or chattel mortgages, signing promissory notes, signing loan and pledge agreements and the making of reports, and giving and granting unto my said attorney in fact full and complete power and authority in the premises to do, say, act, transact, and perform each, all, and every act, thing, and deed whatsoever pertinent to, requisite, and necessary to be done, said, transacted, and performed in and about the premises or related to the purposes and powers herein set out and granted, as fully to all intents and purposes as I might or could do if personally present and acting in my own behalf, with full power of revocation; and I do hereby ratify and confirm each and every thing whatsoever my said attorney may or shall do in the premises by virtue hereof.

Ex. 2, defs.' motion.

Whistle has submitted the ratification of Morris dated March 23, 2009, in which she states that her intention was to grant Whistle the power to sign and execute leases related to the real property owned by her, including but not limited to power to sign oil and gas leases, power to collect money related to those leases, and the power to sue on her behalf.  Ex. A, pltf.'s resp.  She states that she was fully informed about the terms of the Lease and memorandum, and that she authorized Whistle to execute the lease and collect the money under the lease on her behalf.  *Id*.  Whistle's affidavit states that he sent the power of attorney to Sammy Russo prior to receiving the lease documents, and when Whistle offered to get an additional power of attorney if defendants did not find it to be sufficient, Russo informed him that the power of attorney was fine.  Ex. B, pltf.'s resp.

16

In response, defendants assert that the unambiguous provisions of the power of attorney control and cannot be varied by inadmissible parole evidence.  Additionally, defendants state that Morris may not validly ratify the Lease or attempt to enlarge Whistle's authority approximately two and a half years after defendants rejected the Lease and Draft.  Defendants also assert that any alleged hearsay or conclusory statements made by Russo that defendants did not object to the power of attorney is inadmissible and cannot transform the power of attorney into an instrument granting authority to enter into an oil and gas lease.

Defendants have also submitted a supplement to the motion for summary judgment, which includes excerpts from the depositions of Morris and Whistle.  Morris testified that he understood that the only limitation on the power of attorney was that he could not convey fee simple title to the property, but that he could mortgage the property, which could indirectly result in the conveyance of title.  Ex. 1, Whistle dep. p. 14-16, defs.' supp.  Morris testified that she understood that the power of attorney did not allow Whistle to sell the farm.  Ex. 2, Morris dep. p. 11-12, defs.' supp.  When asked whether it was her "intention at the time [she] signed the power of attorney back in 1989" to "grant Wade the authority to take any action with respect to the farmland including, but not limited to, the execution of oil and gas leases," she answered, "I don't know."  *Id*. at 19-20.

In response to the supplement, Whistle asserts that Morris is the only person that can raise the issue of whether Whistle had authority to enter into the agreement.  Whistle also

17

notes that Morris testified that she expected and authorized Whistle to collect rents and profits on the land, which is essentially what a lease agreement does.

The court agrees that defendants are not in a position to assert that Whistle exceeded his authority as stated in the power of attorney in executing the Lease, especially considering Morris asserts that the Lease is valid and she authorized Whistle to enter into the agreement. Furthermore, it would be inequitable to allow defendants to rely on the lack of authority as a basis for asserting invalidity of the Lease when it is clear that they did not object to Whistle executing the agreement on Morris' behalf. It is undisputed that Whistle provided defendants with a copy of the power of attorney, and until now, defendants did not assert that Whistle did not have the authority to act on behalf of Morris. The cases cited by defendants are distinguishable because in those cases, the individual granting the power of attorney asserts that her agent did not have the power to enter into the agreement.

## C.    Promissory Estoppel

Promissory estoppel is applicable only in the absence of an otherwise enforceable contract. *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 934 (8th Cir. 1999). Because the court finds that an enforceable contract exists, there can be no claim for promissory estoppel.

## D.    Fraud, Constructive Fraud, and Fraud *Per Se*

"Under Arkansas law, the tort of fraud, misrepresentation or deceit consists of five elements: (1) a false representation of a material fact; (2) knowledge that the representation

18

is false, or an assertion of fact which he or she does not know to be true; (3) intent to induce action or inaction in reliance upon the representations; (4) justifiable reliance on the representation; and (5) damages suffered as a result of the reliance." *Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184, 1186 (8th Cir. 1996). The Arkansas Supreme Court has defined "actual reliance to mean that the plaintiff acted or did not act by reason of the defendant's misrepresentation." *SEECO, Inc. v. Hales*, 341 Ark. 673, 697, 22 S.W.3d 157, 172 (2000).

"In applying the first prong of this test, ascertaining whether defendant made a false statement of material fact, the general rule in Arkansas is that 'an action for fraud or deceit may not be predicated on representations relating solely to future events.'" *Id.* (quoting *Delta School of Commerce, Inc. v. Wood,* 298 Ark. 195, 200, 766 S.W.2d 424, 427 (1989)). "Representations related solely to future events are considered to be mere opinion under Arkansas law, rather than a matter of accurate knowledge as would be a statement of fact." *Id.* "However, an expression of opinion that is false and known to be false at the time it is made is actionable." *Wood*, 298 Ark. at 199, 766 S.W.2d at 426. "The general rule only applies where the person expressing his or her opinion does so in good faith. *Id.*

For example, in *Wood*, the Arkansas Supreme Court held that statements that "they are phasing out LPNs in the State of Arkansas, so the nursing assistants will be taking the place of the LPNs" and that "she would not get rich as a nursing assistant but that the pay would compare to that of an LPN" were representations of fact, not expressions of opinion, as they were specific and definite. 298 Ark at 200, 766 S.W.2d at 427. In *Grendall v. Kiehl*,

19

291 Ark. 228, 230, 723 S.W.2d 830, 832 (1987), however, the Arkansas Supreme Court held that statements by the defendant that an oil investment was a "good thing" and would "make money" and would "get 50 barrels a day" were in the nature of puffing and constituted mere expressions of opinion, rather than misrepresentations of fact.

"[T]he test for constructive fraud, also called 'legal fraud' or 'fraud in law' has been defined as the making of misrepresentations by one who, not knowing whether they are true or not, asserts them to be true without knowledge of their falsity and without moral guilt or evil intent. *South County, Inc. v. First Western Loan Co.*, 315 Ark. 722, 726-27, 871 S.W.2d 325, 327 (1994) (holding that indication by defendant that they could get plaintiffs some financing was only puffing, not a commitment or representation to do so, and even if they were commitments, were only promises of future conduct in a contractual setting). "Constructive fraud is a type of fraud based on a breach of a legal or equitable duty which the law declares to be fraudulent because of its tendency to deceive others, regardless of the moral guilt, purpose, or intent of the perpetrator." *Evans Indus. Coatings, Inc. v. Chancery Court of Union County*, 315 Ark. 728, 733, 870 S.W.2d 701, 704 (1994). Constructive fraud relieves the plaintiff of the burden of proving scienter, or fraudulent intent, but the plaintiff must still prove the other elements of common law fraud, including a false representation of a material fact and justifiable reliance upon that representation. *Morrison*, 91 F.3d at 1188. "Absent special circumstances or a special relationship between the parties," the doctrine of constructive fraud does not apply. *TEC Floor Corp. v. Wal-Mart Stores, Inc.*, 4 F.3d 599,

602 (8th Cir. 1993); *but see Evans Indus. Coatings, Inc.*, 315 Ark. at 734, 870 S.W.2d at 703 ("[A] fiduciary relationship is not vital to the finding of constructive fraud," but "can form the basis for the practice of a constructive fraud.").

Defendants assert that Whistle's complaint that defendants defrauded him by allegedly agreeing to fund the Bank Draft, but later dishonoring him, fails because he only complains of misrepresentation of a future event, not an existing or past fact.  Defendants also assert that there is no justifiable or detrimental reliance, as there is no evidence of a change of position to Whistle's detriment in reliance upon any alleged misrepresentation.  Defendants further assert that Whistle's constructive fraud claim fails because, as discussed above, the requisite elements are not present, and there is no fiduciary, confidential, or other special relationship between the parties.  In fact, defendants assert that Whistle testified that he knew to be careful because he had had no prior dealings with Arrington or Russo.  Ex. 1, Whistle dep. p. 28, defs.' supp.

In response, Whistle asserts that defendants committed fraud when they asserted that they were paying the lease bonus via draft and then dishonored the Bank Draft, despite the fact that the only condition was good title, which has not been disputed.  Whistle also asserts that dishonoring the draft, even though the lease states that the cash bonus was "in hand paid," constitutes *per se* misrepresentation.  Whistle asserts that from May until September 2006, defendants knew that he relied on the validity of the lease.

The court finds that a reasonable jury could conclude that the actions and statements of defendants were false statements of material fact.  As in *Wood*, the statements in the draft were specific and definite.  Additionally, a reasonable jury could conclude that Whistle justifiably relied upon the statements in the Lease and Bank Draft, and that he suffered injury when the Bank Draft was dishonored and the Lease returned.  Defendants' request for summary judgment on the fraud claims are denied.

**E.     Unjust Enrichment**

Under Arkansas law, a party is unjustly enriched when he has received something of value that belongs to another.  *Klein v. Arkoma Production Co*. 73 F.3d 779, 786 (8th Cir. 1996) (citing *Dews v. Halliburton Indus., Inc.,* 288 Ark. 532, 708 S.W.2d 67, 69 (1986)). Defendants assert that they have neither received nor retained anything of value because the lease was never recorded and was returned to Whistle and they did not drill a well on the land or produce minerals from it.  Whistle does not address this claim, and thus, it appears he has abandoned it.  Summary judgment is granted in favor of defendants on Whistle's unjust enrichment claim.

**F.     Arkansas Deceptive Trade Practices Act**

Defendants assert that because Whistle was the seller or provider of the goods or services at issue, he is not entitled to recover under the Arkansas Deceptive Trade Practices Act ("ADTPA").  In support of this assertion, defendants state that in *Mosby v. International Paper Co., Inc*., 2008 WL 2669148, * 2 (E.D. Ark. July 1, 2008), Judge Wilson dismissed

a case brought under the ADTPA where a provider of services, rather than an actual or potential consumer, was allegedly injured.  The court noted that the ADTPA was enacted to protect consumers and found that the facts alleged under that particular ADTPA cause of action did not appear to be of the type that give rise to a cause of action under that Act.  *Id*. It appears that Whistle has abandoned this claim, as he has failed to address it.  Summary judgment is granted in favor of defendants as to Whistle's ADTPA claim.

## G.   **Lance Houghtling**

Defendants assert that Houghtling did not negotiate the Lease and had no contact with Whistle other than sending a letter returning the unrecorded original Lease and Memorandum to him.  Because there is no evidence that Houghtling committed or participated in any of the acts made the basis of Whistle's suit, defendants assert that summary judgment is appropriate as to him.  Defendants submit the affidavit of Houghtling in support of their assertions.  Ex. 2, defs.' motion.  Whistle does not address this argument.  Summary judgment is granted as to defendant Lance Houghtling, and he is dismissed from this action.

Accordingly, plaintiff's motion for summary judgment (Doc. No. 11) is granted as to the breach of contract claim, and defendants' motion for summary judgment (Doc. No. 15) is granted in part and denied in part.  Defendant Lance Houghtling is dismissed from this action.

IT IS SO ORDERED this 1st day of May, 2009.

_____
UNITED STATES DISTRICT JUDGE